# United States District Court
**EASTERN DISTRICT OF TEXAS**
SHERMAN DIVISION

| | | |
|---|---|---|
| **SHELLY GIESLER** | § | |
| | § | |
| **v.** | § | **4:08-cv-344** |
| | § | **(Judge Mazzant)** |
| **RUIZ FOOD PRODUCTS, INC.** | § | |

## MEMORANDUM OPINION

Now pending before the Court is Defendant's Motion for Judgment as a Matter of Law, Alternative Motion for New Trial, Alternative Motion to Amend Judgment, and Alternative Motion for Remittur (Doc. No. 74). Having considered the motion, response (Doc. No. 80), reply (Doc. No. 85), and the relevant law, the Court hereby DENIES Defendant's motion.

**I. Background and Procedural History**

Plaintiff, a white female, brought this action after Defendant fired her in December 2007, following an incident between Plaintiff and a coworker. Plaintiff alleged that her coworker Coy Meade shoved her across a desk while they were at work. Immediately after the incident, Plaintiff reported it to her supervisor, Gus Aleman. Defendant suspended and later fired Plaintiff. No disciplinary action was taken against Meade.

Plaintiff claims she was fired because of her gender (female) and race (white) and in retaliation for reporting the assault. Plaintiff also asserted claims for sexual harassment, assault, and intentional infliction of emotional distress.

Defendant claims Plaintiff was fired because of her insubordination — yelling and using profanity — while on the phone with her supervisor, Gus Aleman, the night of the incident. Also, Defendant points out that Plaintiff had a history of using inappropriate language at work.

Prior to trial, the Court dismissed Plaintiff's claims for retaliation, sexual harassment, assault,

and intentional infliction of emotional distress. Plaintiff proceeded to trial only on her gender and race discrimination claims.

After a two-and-a-half-day trial beginning on October 20, 2009, the jury awarded Plaintiff $27,700 in lost wages and $73,000 in exemplary damages on her gender discrimination claim. The jury found no liability on Plaintiff's race discrimination claim. The Court entered a judgment on the verdict on November 9, 2009, and Defendant timely filed this motion for judgment as a matter of law.

Defendant challenges the verdict on multiple grounds. First, Defendant claims that Plaintiff did not present enough evidence to support a finding of gender discrimination. Second, Defendant challenges the amount of back pay awarded. Third, Defendant challenges the award of exemplary damages. Finally, Defendant makes an alternative request for new trial, arguing that Plaintiff committed multiple violations of the Court's motions in limine and made improper arguments.

## II. Motion for Judgment as a Matter of Law

### A. Legal Standard

Judgment as a matter of law should only be granted if, after reviewing all evidence in the light most favorable to the non-movant, there is no legally sufficient evidentiary basis to support the verdict. *Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 475 (5th Cir. 2005). The Court should defer to the jury's verdict if there is sufficient evidence to do so. *Bryant*, 413 F.3d at 475.

### B. Evidence of Discrimination

Defendant argues that the jury's finding of gender discrimination is not supported by the evidence. Defendant first claims that Plaintiff has not supported her claim of pretext. Second, Defendant argues that Plaintiff did not present sufficient evidence that she was fired because of her gender. For the reasons stated below, Defendant's motion fails under both of these theories.

2

Defendant claims that Plaintiff did not demonstrate pretext because Plaintiff failed to challenge every prior complaint by coworkers made against Plaintiff. The Court disagrees.

At trial, Defendant argued that Plaintiff was fired for her treatment of Aleman in light of previous issues with foul language and mistreatment of employees. Transcript of Trial October 22, 2009 at 16:23–17:17. Defendant did not present evidence or argue at trial that Plaintiff was fired because of each past indiscretion. *See, e.g.*, Transcript of Trial October 21, 2009 at 14:3–21 (explaining that Plaintiff had received a verbal warning following a previous incident). Defendant now wants the Court to consider each previous issue involving Plaintiff as a separate basis to support its decision to fire Plaintiff. However, the Court will consider these prior incidents in the same way that Defendant asked the jury to: as a collective backdrop against which Defendant made its decision to fire Plaintiff after her mistreatment of Aleman. Plaintiff did not have a burden to directly counter the legitimacy of each prior issue involving Plaintiff.

Defendant also claims that Plaintiff did not present enough evidence for a reasonable jury to find that she was fired because of her gender. For the reasons stated below, the Court finds that the evidence introduced at trial is sufficient to sustain the jury verdict in Plaintiff's favor.

Plaintiff presented evidence of the following at trial: (1) the decision to fire Plaintiff was influenced by Plaintiff's male supervisor Aleman; (2) Defendant did not treat Plaintiff the same as her similarly situated male counterparts; (3) Plaintiff did not use foul language and was not insubordinate to Aleman; and (4) Defendant did not follow its progressive discipline policy before firing Plaintiff.

Defendant challenged some of Plaintiff's factual contentions that are listed above. Defendant's local human resources manager, Rebeckah Flanagan, testified that Plaintiff was fired

after using profane language during a phone call with her supervisor in violation of company policy. Flanagan also testified that she considered the fact that this was a repeat offense for Plaintiff. Transcript of Trial October 21, 2009 at 22:19–24:10. However, Plaintiff need not prove her case by uncontroverted evidence. Plaintiff only needs to demonstrate that she presented enough evidence that a reasonable jury could infer discriminatory intent. *See Bryant*, 413 F.3d at 476. The evidence presented at trial is sufficient to sustain the verdict in favor of Plaintiff.

### 1. Aleman Influenced the Decision to Fire Plaintiff

Defendant repeatedly emphasizes that Flanagan — a woman — made the decision to fire Plaintiff because Plaintiff was insubordinate to her supervisor, Gus Aleman. Defendant made this same argument at trial. However, Plaintiff introduced evidence that Flanagan's decision was not made independently, but was influenced by Aleman. If Plaintiff can show that others with a discriminatory intent influenced the decision to fire her, that person's intent may be imputed to the decisionmaker. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226–27 (5th Cir. 2000)("If the employee can demonstrate that others had influence or leverage over the official decisionmaker, and thus were not ordinary coworkers, it is proper to impute their discriminatory attitudes to the formal decisionmaker.").

Flanagan testified that she made the termination decision independently. Transcript of Trial October 21, 2009 at 24:6–7. However, the jury was entitled to disbelieve Flanagan based on the evidence produced at trial. Specifically, Flanagan also testified that she initially only suspended Plaintiff pending further investigation. Transcript of Trial October 21, 2009 at 22:19–24. Aleman recommended terminating Plaintiff rather than a suspension. Transcript of Trial October 21, 2009 at 62:2–63:2. It was common practice to rely on the supervisor's recommendation in termination

decisions. Transcript of Trial October 21, 2009 at 76:19–77:9. Flanagan did not interview any involved employees other than Aleman. Transcript of Trial October 20, 2009 at 171:6–172:1.

Although Defendant presented conflicting evidence at trial on some of these factual issues, the only question before the Court is whether Plaintiff produced enough evidence to support a jury finding in her favor. *Bryant*, 413 F.3d at 475. It is the role of the jury to resolve conflicting factual issues. Based on the evidence listed above, the Court finds that Plaintiff has presented enough evidence to support a finding that Aleman influenced the decision to fire Plaintiff.

### 2. Disparate Treatment of Similarly Situated Males

The fact that Aleman may have influenced the decision to fire Plaintiff is not sufficient to demonstrate discrimination. Plaintiff must also demonstrate that Aleman was motivated by a gender-based bias. Defendant claims that Plaintiff was fired for insubordination and verbal assaults on her coworkers. Plaintiff presented evidence at trial that similarly situated men were not even reprimanded for similar conduct.

Plaintiff presented evidence that following the incident between Meade and Plaintiff, neither Aleman nor Flanagan investigated Plaintiff's claim that Meade assaulted her. Defendant argues that this is improper evidence and cannot support a finding of investigation. Comparative evidence of disparate treatment can support a finding of discrimination, but only where the coworkers were similarly situated. *Bryant v. Compass Group USA, Inc.*, 413 F.3d 471, 478. Individuals are similarly situated when they are in nearly identical circumstances. *Bryant*, 413 F.3d at 478. Defendant claims that Meade and Plaintiff were not similarly situated because they were accused of different acts and because Meade did not have a history of prior complaints against him as did Plaintiff.

Meade and Plaintiff were similarly situated for the purpose of showing disparate treatment.

5

Both employees were accused of highly inappropriate behavior. Plaintiff was accused of verbal assault against her coworkers and supervisor, while Meade was accused of physically assaulting a coworker. The law does not require identical conduct, and verbal and physical assault both constitute mistreatment of other employees. Also, both types of conduct were addressed by the same provision of the employee handbook.

These behaviors by Meade, a male employee, and Plaintiff, a female employee, are nearly identical such that the different responses by Defendant support an inference of discrimination. Furthermore, the Court notes that the circumstances surrounding the alleged assault by Meade and the phone call between Plaintiff and Aleman arose out of the exact same chain of events, which occurred within a matter of minutes. As noted above, Plaintiff presented evidence that Defendant made little to no investigation into the circumstances of that incident and then fired Plaintiff and took no disciplinary action against Meade. Transcript of Trial October 20, 2009 at 182:9–18. In other words, regardless of the specific allegations against Meade and Plaintiff, both were accused of allowing the situation to spiral out of control. Under these circumstances, the infractions by Plaintiff and Meade were nearly identical.

Defendant also argues that Meade and Plaintiff were not similarly situated because Plaintiff had a history of inappropriate behavior at work while Meade did not. Plaintiff had previously been counseled for using inappropriate language with coworkers (the only documented prior incident) and had used foul language in a meeting with Flanagan. Transcript of Trial October 21, 2009 at 44:5–10 & 46:5–8. Aleman also testified that he had verbally counseled Plaintiff after several coworkers had complained that she mistreated them and used foul language. Transcript of Trial October 21, 2009 at 66:5–25.

Individuals are similarly situated only when they are in nearly identical circumstances. *Bryant*, 413 F.3d at 478. Employees are not similarly situated when the differences in their circumstances–such as their disciplinary records–account for the differences in their treatment. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001). However, the circumstances between employees need not be identical, and only those differences that could justify different treatment are relevant to determine whether employees are similarly situated. *See*, *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001) ("[T]he conduct at issue is not nearly identical *when the difference ... accounts for the different treatment received from the employer*").

In the present case, Flanagan and Aleman essentially ignored the assault claim against Meade. Transcript of Trial October 20, 2009 at 182:9–18 & Transcript of Trial October 21, 2009 59:23–60:2. Both Flanagan and Vice President of Human Resources Tony Caetano testified that allegations of assault should be investigated. Transcript of Trial October 20, 2009 at 172:12–18 & Transcript of Trial October 21, 2009 at 182:9–18.

The net effect was that the company policies applied to Plaintiff, a woman (as demonstrated by the fact that she was fired), but not to Meade, a man accused of committing substantially similar misconduct (as demonstrated by the lack of investigation into the claims against him). The only explanation offered by Defendant is that Plaintiff and Meade were not similarly situated. But the facts in this case differ from those in which the plaintiff complains merely of different punishment. The degree of punishment could plainly be affected by the offender's prior indiscretions. In the present case, however, Defendant refused to subject Plaintiff's male counterpart (same job, same supervisor, and engaging in nearly identical conduct) to the same company policy as it applied to Plaintiff. The differences in Plaintiff's and Meade's work records cannot justify such a disparity.

Plaintiff also presented evidence that Mario Sanchez, a coworker who witnessed part of the incident between Plaintiff and Meade, refused to make a statement when told to do so by Aleman. Transcript of Trial October 21, 2009 at 56:4–6. Like Plaintiff, Sanchez had a prior report of inappropriate behavior (physical assault). Transcript of Trial October 21, 2009 at 42:9–43:4. However, when Sanchez refused to file the statement, no disciplinary action was taken. Transcript of Trial October 21, 2009 at 56:4–6. Yet Flanagan testified that similar conducted by Plaintiff was insubordination. Transcript of Trial October 21, 2009 at 24:16–25:14. The jury was entitled to find discrimination on the basis that Sanchez's action constituted insubordination and he received a lesser punishment than Plaintiff.

### 3. Plaintiff Testified That She Was Not Insubordinate

Plaintiff also challenged the factual basis of Defendant's reason for firing her. Plaintiff testified that she was not insubordinate to Aleman and did not use foul language during their conversation. Transcript of Trial October 20, 2009 at 119:9–13. Plaintiff also testified that she was speaking to Aleman moments after her coworker assaulted her, which contributed to her "excited" state during her conversation with Aleman. Transcript of Trial October 20, 2009 at 119:20–23. Additionally, Plaintiff introduced evidence that Defendant made little or no investigation to determine whether Plaintiff's explanation was legitimate. Transcript of Trial October 20, 2009 at 182:9–18.

Although these facts were in dispute at trial, the jury was entitled to believe Plaintiff's testimony.

### 4. Defendant Did Not Follow Its Progressive Discipline Policy

Finally, Plaintiff elicited testimony that Defendant did not follow its progressive discipline policy in dealing with Plaintiff. Transcript of Trial October 21, 2009 at 53:1–12. An employer's

failure to follow its progressive disciplinary policy may be some evidence of pretext. *Machinchick v. PB Power, Inc.,* 398 F.3d 345, 354 (5th Cir. 2005).

For the reasons discussed above, the jury's finding of gender discrimination is supported by the evidence. Accordingly, Defendant's motion for judgment as a matter of law on this basis is DENIED.

### C. Back Pay

Defendant also challenges the amount of compensatory damages awarded to Plaintiff. Defendant claims that the amount awarded was drawn from a chart that Plaintiff's counsel showed during closing arguments. Defendant argues that the figures included in the chart and awarded by the jury were not supported by the evidence introduced at trial. Defendant further argues that the amount awarded did not take into account Plaintiff's failure to mitigate.

#### 1. Evidence of Damages at Trial

The jury awarded Plaintiff $27,700 in back pay. This figure reflects the exact amount suggested by Plaintiff's counsel in closing and included on Plaintiff's demonstrative exhibit at closing. However, the amount is also supported by the evidence introduced at trial. Plaintiff's Trial Ex. 7–14.

Back pay is calculated by determining the amount Plaintiff would have made, less any amount that Defendant proves Plaintiff received in the interim. *Marks v. Prattco*, 633 F.2d 1122, 1125 (5th Cir. 1981). Having considered the pay stubs and W-2s submitted into evidence and the parties' stipulations, the Court finds that the award of back pay is supported by the evidence. Also, Defendant failed to object to Plaintiff's chart during trial, and therefore has not preserved this issue for review. Accordingly, Plaintiff's request to overturn the award of damages is DENIED.

Furthermore, the amount awarded for 2009 does not include an award of front pay. The amount awarded ($9,000) plus the amount that Plaintiff earned as demonstrated by the evidence ($12,556.29) is less than the amount Plaintiff would have received from Defendant through the date of trial. Accordingly, Defendant's request that the Court vacate the award of front pay is DENIED.

### 2. Mitigation

Defendant is entitled to have Plaintiff's lost income damages reduced by the amount of pay that Plaintiff reasonably could have earned at a comparable job. *Floca v. Homcare Health Servs., Inc.*, 845 F.2d 108, 111 (5th Cir. 1988). Defendant must prove by a preponderance of the evidence that (1) a substantially equivalent position was available, (2) Plaintiff failed to use reasonable diligence to obtain such a position, and (3) Plaintiff's damages were increased by her failure to take reasonable actions to secure such a position. *Floca*, 845 F.2d at 111.

The jury was properly instructed on the issue of mitigation. Defendant has not pointed to any evidence that demonstrates it is entitled to judgment as a matter of law on the issue of mitigation. Plaintiff's testimony that she left her previous employers on good terms at least twenty-two months before she was fired by Defendant does not compel a finding in Defendant's favor. This does not demonstrate that the positions were available or that they were substantially equivalent. Accordingly, Defendant's request for a reduction of back pay for failure to mitigate is DENIED.

### D. Exemplary Damages

Exemplary damages are available in an action under the Texas Commission on Human Rights Act when the Plaintiff demonstrates by clear and convincing evidence that Defendant acted with malice or reckless indifference to the right of plaintiff to be free from discriminatory actions. *Edwards v. Aaron Rents, Inc.*, 482 F.Supp.2d 803, 815–16 (W.D. Tex. 2006) & Tex. Civ. Prac. &

Rem. Code § 42.003(a) & (c). Clear and convincing evidence means enough evidence to produce a firm belief or conviction of the truth of the allegations. Tex. Civ. Prac. & Rem. Code § 42.001(2) Defendant claims that Plaintiff did not present any evidence of Defendant's state of mind.

However, as discussed above, Plaintiff presented evidence of the following: (1) Aleman lied about his conversation with Plaintiff; (2) Flanagan conducted little to no investigation to resolve the inconsistencies in the statements submitted by Plaintiff, Aleman, and Meade; and (3) Flanagan did not make an independent decision to fire Plaintiff.

Considering the evidence listed above, a reasonable jury could find by clear and convincing evidence that Defendant discriminated against Plaintiff in the face of a perceived risk that its actions violated the law. Accordingly, Defendant's motion for judgment as a matter of law is DENIED as to punitive damages.

### III. Request for New Trial

In the alternative to the request for judgment as a matter of law, Defendant seeks a new trial. Defendant challenges the Court's instruction to the jury as well as alleged misconduct by Plaintiff's counsel. For the reasons stated below, Defendant's request for a new trial is DENIED.

#### A. Jury Instructions

Defendant timely objected to the Court's instruction on discrimination. The challenged instructions stated:

> Plaintiff does not have to prove that unlawful discrimination was the only reason that Defendant fired Plaintiff. If you disbelieve the reasons Defendant has given for its decision, you may infer that Defendant fired Plaintiff because of her race or sex. Keep in mind that the question before you is whether Defendant discriminated against Plaintiff on the basis of her sex or race.

Defendant objected to this instruction during the charge conference, and requested the following instruction instead:

> [S]imply because you do not agree with the employment decision made by Defendant or the manner in which the decision was made is not sufficient to establish Plaintiff's claim under the law. The ultimate question is whether Plaintiff was the victim of intentional discrimination based upon her sex and/or race.
> (Doc. No. 31, page 9–10).

Defendant claims that the Court's instruction misstates the law because it leads the jury to believe that they must find discrimination if they disbelieve Defendant's reason for firing Plaintiff. However, the Court's instruction clearly states that the jury *may* infer discrimination. The Court presumes that the jury, if properly charged, will follow the Court's instructions. *United States v. Tomblin*, 46 F.3d 1369, 1390 (5th Cir. 1995).

Furthermore, the standard presented in the Court's charge is the correct one in the Fifth Circuit. The instruction given by the Court properly states that Plaintiff does not have to introduce evidence of both pretext and additional evidence of discrimination. *Ratliff v. City of Gainesville*, 256 F.3d 355, 361–62 (5th Cir. 2001). One or the other is sufficient to support an inference of intentional discrimination. *Ratliff*, 256 F.3d at 361–62. This is know as the permissive pretext only standard and is proper and required in the Fifth Circuit. *Ratliff*, 256 F.3d at 361–62. *See also*, *Kandida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 574–78 (5th Cir. 2004)(calling into doubt the *Ratliff* holding, but recognizing it as binding precedent). When the charge correctly states the substance of the law, its submission to the jury is not error. *Julian v. City of Houston*, 314 F.3d 721, 727 (5th Cir. 2002).

Accordingly, Defendant's motion for new trial on the basis of error in the jury charge is DENIED.

### C. Allegations of Misconduct by Plaintiff's Counsel

Defendant also argues that Plaintiff repeatedly violated the Court's motions in limine and made improper arguments that confused the jury. However, Defendant never raised these objections at trial or moved to strike objectionable testimony, despite Defendant's claim to the contrary. Additionally, the Court notes that Defense counsel agreed to the introduction of photographs of Plaintiff's injuries (Defendant's Motion in Limine 3). Also, Defendant's witness Coy Meade introduced the prior assault charge now complained of by Defendant (Defendant's Motion in Limine 1). Furthermore, the Court amended its ruling on Defendant's Motion in Limine 14 to allow Plaintiff to question Flanagan regarding the Mario Sanchez incident.

Finally, Defendant has not sufficiently indicated that Defendant was prejudiced by the remaining violation (Defendant's Motion in Limine 8) or any improper argument made by Plaintiff. Accordingly, Defendant's motion for new trial on this basis is hereby DENIED.

### IV. Conclusion

For the reasons stated above, Defendant's Motion for Judgment as a Matter of Law, Alternative Motion for New Trial, Alternative Motion to Amend Judgment, and Alternative Motion for Remittur (Doc. No. 74) is DENIED.

**IT IS SO ORDERED.**
**SIGNED this 2nd day of March, 2010.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE